UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CE3 LLC<br><br>    *Plaintiff,*<br><br>    -v-<br><br>CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., and TOFG LLC d.b.a. 1091,<br><br>    *Defendants.* | CIVIL ACTION NO: _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

CE3 LLC ("CE3"), as and for its Complaint, hereby alleges as follows:

## INTRODUCTION

1. Chicken Soup for the Soul Entertainment, Inc. ("Chicken Soup") is an entertainment and media company in apparent financial peril. To compensate for its losses, Chicken Soup has implemented a highly illegal and immoral scheme – it steals and embezzles the monies earned by filmmakers who unfortunately decided to hire a distribution company that would later be acquired by Chicken Soup.

2. Through years of hard-work, director, writer and producer James Fox wrote, directed and produced *The Phenomenon* and *Moment of Contact*, two critically acclaimed independent documentary films. Fox and CE3, Fox's production company, hired TOFG LLC d.b.a. 1091 ("1091"), a film and television distribution company, to market and distribute these films. Among other things, 1091 was tasked with collecting monies that were owed to CE3 from various third-parties that had commercially exploited CE3's films, including subscription video on demand providers, transactional video on demand providers, advertising video of demand

1

providers and electronic sell-through providers.  In simple terms, CE3 paid 1091 to collect CE3's revenues from these third-party sources.

3. Initially, there were no problems with 1091.  After 1091 was acquired by Chicken Soup, however, 1091 began to change for the worse.  By early 2023, 1091 began withholding from CE3 monies that 1091 had collected on CE3's behalf.  CE3 frequently asked 1091 for updates as to when CE3 would be receiving its monies from its films.  Fox and CE3 learned that 1091 had been taken over and was being controlled by Chicken Soup, 1091's new parent company.  Chicken Soup, in particular its CEO, William Rouhana, assured Fox that Chicken Soup was "working on it," and that Fox and CE3 should be patient.

4. Fox and CE3, however, would later learn the real reason CE3 had not received the monies that it had earned from its films and that it was indisputably owed: at some point after Chicken Soup acquired and took control of 1091, Chicken Soup began to systematically dissipate, steal and embezzle the monies from CE3's films that 1091 was collecting on CE3's behalf.  Instead of releasing CE3's monies to CE3, upon information and belief, Chicken Soup secreted CE3's monies to Chicken Soup accounts.

5. Unfortunately, Fox and CE3 are not alone.  Chicken Soup has victimized other filmmakers who also hired 1091.  Through this lawsuit, CE3 undoubtedly seeks to vindicate its rights and take back what belongs to it.  CE3 also seeks to prevent Chicken Soup and 1091 from preying on other filmmakers that placed trust and confidence in 1091.

## THE PARTIES

6. Plaintiff CE3 is a California limited liability company with its principal place of business in Charlotte, Vermont.  CE3's sole member is James Fox, an individual who resides in Charlotte, Vermont and is a citizen of Vermont.

7. Upon information and belief, defendant Chicken Soup is a Delaware corporation with its principal place of business in Cos Cob, Connecticut.

8. Upon information and belief, defendant, 1091 is a Delaware limited liability company with its principal place of business in New York, New York. Upon information and belief, 1091's sole member is Chicken Soup which is a Delaware corporation with its principal place of business in Cos Cob, Connecticut.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff CE3 and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Upon information and belief, this Court has personal jurisdiction over Defendants because defendant 1091's principal place of business is located in New York and defendant Chicken Soup conducts continuous and systematic business in New York.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

12. In addition, pursuant to the Agreements (as that term is defined herein), CE3 and 1091 agreed and consented to the exclusive jurisdiction of this Court to hear any disputes arising out of or related to those Agreements, and that the Agreements are governed by New York law.

## COUNT I

### (Conversion -Against Chicken Soup)

13. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-12, inclusive.

14. CE3 is the production company of filmmaker, James Fox.

15. CE3 produced the motions pictures *Moment of Contact* and *The Phenomenon*.

16. CE3 owns the motion picture *The Phenomenon* and all rights to and from *The Phenomenon*.

17. CE3 also owns the motion picture *Moment of Contact* which was previously known as *Varginha: The Roswell of Brazil* and all rights to and from *Moment of Contact*. *Moment of Contact* and *The Phenomenon* are referred to collectively as the "Pictures."

18. 1091 is a film and television distribution company. Among other things, 1091 helps its filmmaker clients market and distribute their motion pictures so that they can be exploited, exhibited and made available for viewing by the public. 1091 also assists its filmmaker clients to collect gross revenues from the exploitation of their motion pictures by third-parties.

19. CE3 is a client of 1091. Specifically, on or about July 19, 2019, CE3 and 1091 entered into a certain Motion Picture Distribution Agreement for *The Phenomenon* (the "Phenomenon Agreement"). On or about May 14, 2021, CE3 and 1091 entered into a certain Motion Picture Distribution Agreement for *Moment of Contact* (the "MOT Agreement"). The Phenomenon Agreement and the MOT Agreement are referred to collectively as the "Agreements."

20. Pursuant to the Agreements, 1091 provided CE3 with various services in connection with the Pictures. Among other things, each of the Agreements required 1091 to, on CE3's behalf, collect monies owed by third parties based on their exploitation of each of the Pictures. In exchange for 1091's services under the Agreements, 1091 was entitled to retain a distribution fee equal to Twenty-Two percent (22%) of all gross receipts actually received by 1091 derived from the exploitation of the Pictures.

21.     The gross receipts paid by third-parties from the exploitation of the Pictures (the "Gross Receipts") belonged to CE3 as the Pictures' owner.  Under the Agreements, 1091 was required, within 45 days from the end of the month when any Gross Receipts from the Pictures were received by 1091, to distribute all Gross Receipts to CE3, less 1091's distribution fee and any expenses and advances that 1091 was entitled to recoup (the "Receipts").   After such 45 days, CE3 had an immediate possessory interest in the Receipts from the Pictures that 1091 had collected on CE3's behalf.

22.     Upon information and belief, in or around March 2022, Chicken Soup acquired 100% of the membership interest in 1091.  Upon information and belief, Chicken Soup controlled 1091 and its operations following that acquisition.

23.     Since at least early 2023, various third-parties have paid monies to 1091 on CE3's behalf based on their exploitation of CE3's Pictures.  Upon information and belief, beginning in early 2023, Chicken Soup re-directed and diverted those monies to specific Chicken Soup account(s).  As a result of such diversion, Chicken Soup has taken control over CE3's monies.

24.      When such monies were received, 1091 was required under the Agreements to maintain a continued and detailed accounting of, among other things, all Gross Receipts that were received, any distribution fees paid to 1091, any expenses or advances recouped by 1091 and CE3's Receipts.  Pursuant to these accounting obligations, 1091 maintained such an accounting which specifically identified, among other things CE3's Receipts from the Pictures that had been received and were being maintained.

25.     By early 2023, it became apparent to CE3 that 1091 was withholding from CE3 its Receipts from the Pictures.

26. Based on 1091's accounting, there were at least $856,779.93 in Receipts that had been withheld from CE3 from the accounting periods between May and August 2023.

27. On or about February 1, 2023, June 9, 2023, August 2, 2023, and October 5, 2023, CE3, through its counsel, sent 1091 and/or Chicken Soup letters notifying them that 1091 was improperly withholding CE3's property, in particular CE3's Receipts from the Pictures, and demanded that 1091 immediately return to CE3 all of CE3's Receipts (the "Demand Letters").

28. At no point after receiving CE3's various Demand Letters did either Chicken Soup or 1091 dispute that 1091 was improperly withholding CE3's Receipts from the Pictures.

29. Following the Demand Letters, 1091 and/or Chicken Soup released to CE3 $307,000.00 of the $856,779.93 in Receipts from the May to August 2023 accounting periods. However, significant portions of the Receipts continued to be withheld from CE3.

30. In October 2023, CE3 learned that 1091 was no longer holding CE3's monies, and that Chicken Soup, which was controlling 1091, had been stealing CE3's Receipts by diverting those monies to Chicken Soup account(s).

31. On or about October 27, 2023, CE3, through its counsel, sent Chicken Soup a letter specifically demanding that Chicken Soup immediately return to CE3 all of CE3's Receipts from the Pictures. To date, Chicken Soup has failed to do so.

32. Based on 1091's accounting, there were at least an additional $128,775.52 in Receipts that had been collected on CE3's behalf for the September 2023 accounting period. Only $40,000 of such Receipts from the September 2023 accounting period have been released to CE3. Accordingly, $88,775.52 is also being withheld from CE3 from the September 2023 accounting period.

33.     Chicken Soup has stolen and continues to refuse to return a portion of CE3's Receipts from the Pictures from at least the April 2023 through the September 2023 accounting periods (not including additional Receipts from the October or November 2023 accounting periods). Specifically, Chicken Soup refuses to return at least $638,555.45 in Receipts from the Pictures owned by CE3 and stolen by Chicken Soup. As the Pictures continue to generate Gross Receipts, the amount of Receipts that Chicken Soup has stolen continues to grow.

34.     Chicken Soup has intentionally and without CE3's authority, exercised possession and control over CE3's personal property despite multiple demands from CE3 that Chicken Soup and/or 1091 immediately return to CE3 all of CE3's Receipts from the Pictures.

35.     CE3 both owned and had a possessory right and interest in the Receipts from CE3's Pictures.

36.     By diverting, stealing and refusing to return to CE3's Receipts from the Pictures, Chicken Soup has exercised dominion and control over and has interfered with CE3's right to possession of its property, in particular CE3's Receipts from CE3's Pictures.

37.     Based on Chicken Soup's conversion, CE3 has sustained significant and substantial damages in an amount of at least $638,555.45.

## COUNT II

### (Breach of Contract -Against 1091)

38.     Plaintiff CE3 repeats and incorporates by reference the allegations in paragraphs 1- 37, inclusive.

39.     As alleged above, CE3 and 1091 entered into the Agreements.

40.     Pursuant to the Agreements, the Receipts were payable to CE3 by 1091. 1091 was permitted to withhold the Receipts for a period of up to 45 days from the end of the month when

any Gross Receipts from the Pictures were received by 1091. Within such 45 days, 1091 was required to release and pay such Receipts to CE3.

42. 1091 breached the Agreements by withholding the Receipts from CE3, their rightful owner, beyond such 45 day period.

42. As a result of these breaches of the Agreements, CE3 has sustained significant and substantial damages in the amount of at least $638,555.45.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CE3 prays that:

1. Based on defendants' conversion, plaintiff CE3 is entitled to:

    a. CE3's actual damages including all consequential damages in an amount to be determined, plus interest;

    b. A disgorgement of defendants' profits resulting from defendants' intentional, illegal and tortuous conduct;

    c. The cost of the action, together with reasonable attorney fees;

    d. Punitive damages based on defendants' willful, malicious and outrageous conduct; and

    e. Such other and further relief as the Court may deem just and proper

2. Based on 1091's breach of contract, plaintiff CE3 is entitled to:

    a. CE3's actual damages including all consequential damages in an amount to be determined, plus interest;

    b. The cost of the action, together with reasonable attorney fees; and

    c. Such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CE3 hereby demand a trial by jury.

Dated: November 7, 2023						By: /s/ *Scott R. Landau*
										Scott R. Landau (SL-3778)
										ABELL ESKEW LANDAU LLP
										256 5th Avenue, 5th Floor
										New York, New York 10003
										Tel. (646) 970-7343
										slandau@aellaw.com

										Jesse A. Kaplan, Esq. (JK-4594)
										FREEDMAN + TAITELMAN LLP
										1801 Century Park West, 5th Floor
										Los Angeles, California 90067
										(310) 201-0005
										jkaplan@ftllp.com

										*Attorneys for Plaintiff CE3*